UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Park West Galleries, Inc.,**

     **Plaintiff,**

                           **Case No. 20-11603**

**v.**

                         **HONORABLE DENISE PAGE HOOD**

**ALP, Inc.,**

     **Defendant.**

_____/

## ORDER DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATOR'S SUMMARY DISPOSITION AND CLARIFICATION ORDERS [#12] AND GRANTING DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD [#11]

Before the Court are Plaintiff's Motion to Vacate Arbitrator's Summary Disposition and Clarification Orders, ECF No. 12, and Defendant's Motion to Confirm Arbitration Award, ECF No. 11. Both motions have been fully briefed.

## I. BACKGROUND

ALP is engaged in the production, maintenance, marketing, licensing, and commercialization of artwork created by Peter Max. Park West is a Michigan corporation with its principal place of business in Southfield, Michigan. Park West markets itself as the "largest private gallery in the world." It mass sells artwork through auctions on hundreds of cruise ships and in galleries at shopping malls and hotels.

In April 2019, ALP brought two lawsuits in New York state court against several former business associates of Peter Max (the "ALP Lawsuits"), including Park West, including the ongoing New York state court action (*ALP, Inc. v. Park West et al.,* N.Y. State Court Index No. 153949/2019 (the "State Court Action")). ALP alleged that those defendants took advantage of Peter Max's advanced age and disability to cash in on his continued popularity—to the detriment of Peter Max and his family.

The ALP Lawsuits seek, among other things, the return of over 23,000 pieces of ALP's artworks that were shipped to Park West in January 2019 (the "Keepers"), following an allegedly unauthorized transaction that was put into place in November – December 2018 (the "Keepers Transaction"). All pieces were from a collection known as "Peter's Keepers"—select pieces that Peter Max himself preferred, had identified as being of higher quality, and had decided to set aside to be kept for his family's future use. The 23,000 Keepers, which allegedly are worth hundreds of millions of dollars, were "sold" to Park West for $14.7 million.

In July 2019, ALP filed its First Amended Complaint in the State Court Action (the "FAC"), which alleged with respect to Park West:

1. First Cause of Action: "Conversion Against Park West and Luntz Regarding the Peter's Keepers."

2. Second Cause of Action: "Declaratory Judgment Against Park West and Gene Luntz Regarding the Peter's Keepers."

3. Fifth Cause of Action: "Breach of Fiduciary Duty Against Gene Luntz and Aiding and Abetting Breach of Fiduciary Duty Against Park West."

4. Sixth Cause of Action: "Replevin against Park West."

5. Seventh Cause of Action: "Breach of Express Contracts Against Park West."

The Seventh Cause of Action for Breach of Express Contracts, which sought from Park West payment of $2,643,026 for unpaid artworks (the "$2.6 Million Claim") was the only cause of action against Park West that was unrelated to the Keepers Transaction. Like the original complaint, the FAC included no cause of action against Park West for breach of contract pertaining to the Keepers Transaction. The only breach of contract cause of action related to the $2.6 Million Claim.

After ALP and Park West engaged in negotiations regarding the $2.6 Million Claim, they executed the Partial Settlement Agreement, effective November 27, 2019, and ALP withdrew its Seventh Cause of Action on December 10, 2019. ALP maintains that the Partial Settlement Agreement only provided for the dismissal/withdrawal of ALP's Seventh Cause of Action with respect to the State Court Action, but Park West's argues that the Partial Settlement Agreement also required the withdrawal of all non-breach of contract claims in the State Court Action, except for a portion of the Second Cause of Action for a Declaratory Judgment.

3

On December 12, 2019, Park West filed a Confidential Demand for Arbitration (the "Demand") with the AAA in Southfield, Michigan. The Demand sought to resolve a dispute concerning the scope and application of certain terms of the Partial Settlement Agreement entered November 27, 2019, and asserted claims for declaratory judgment and breach of contract. Park West argued that the Partial Settlement Agreement required ALP to dismiss all claims in the State Court Action, except for certain breach of contract claims. ALP filed an answering statement and motion for summary disposition of all of Park West's claims, arguing that the Partial Settlement Agreement was unambiguous, and that, by its plain and ordinary meaning, required only the withdrawal of ALP's seventh cause of action in the State Court Action (the "ALP Motion").

Following extensive briefing and a pre-hearing conference, on February 28, 2020, Arbitrator Gene J. Esshaki (the "Arbitrator") issued an arbitral award (the "Award"). He granted ALP's motion for summary disposition. He agreed with ALP that the Partial Settlement Agreement and Limited Release (the "Partial Settlement Agreement" or "PSA") was clear and unambiguous "on its face and within its four corners," and concluded that ALP had fully complied with it, and summarily disposed of Park West's Demand for Arbitration. In the Award, the Arbitrator found:

> A fair reading of [the Partial Settlement Agreement], not taking into
> account any extrinsic evidence other than [Park West's] federal court

4

Complaint and [ALP's] First Amended state court Complaint, which are specifically referenced in the document, leads to the conclusion that on its face and within its four corners the document is clear and unambiguous. Further, a fair reading of [the Partial Settlement Agreement] conveys the intent of the parties at the time of execution.

After detailed review of the relevant clauses of the Partial Settlement Agreement, the Arbitrator concluded that:

It is simply no coincidence that the consideration referenced in [the Partial Settlement Agreement] is the exact amount of damages [ALP] sought to recover under Court II of the First Amended Complaint for prior artwork sold, delivered, but unpaid by [Park West].

It is illogical to conclude that [ALP] would accept payment of the exact amount demanded under Count VII of the First Amended Complaint for open invoices due by [Park West] and, without further or additional consideration, release claims against [Park West] set forth in the First Amended Complaint in the approximate amount of $400,000,000.00."

On March 19, 2020, Park West brought a motion requesting that the Arbitrator "clarify" the Award. Park West did not argue that the Award was ambiguous, or in need of interpretation; it instead stated that the Award "rest[ed] on a fundamental misunderstanding of Park West's position[,]" and filed the motion "to clarify [their] own position[,]" not that of the Arbitrator.  ALP opposed Park West's motion, and on April 3, 2020, the Arbitrator issued an order denying Park West's motion for clarification, finding it really was a prohibited motion for reconsideration (the "Clarification Order"). Specifically, the Arbitrator stated:

By its very nature, a Motion for Clarification of a prior Order must rest upon a lack of clarity, confusion, or contradictory rulings contained within the prior order. Claimant's current Clarification Motion is based

5

upon the Undersigned "fundamentally misunderstanding Claimant's prior stated position". Nowhere in the Motion does it point to a lack of clarity in any of the reasoning, nor contradictory or confusing statements. As such, the Motion is not one for Clarification but is actually a Motion for Reconsideration.

The Undersigned did not misunderstand Claimant's prior arguments. The Order Granting Summary Disposition to Respondent addressed all of Claimant's arguments at length and in order. Having issued the Order Granting Summary Disposition to Respondent, the Undersigned is not permitted nor inclined to reverse this ruling.

Park West also filed a complaint in Michigan State Court, in the Circuit Court for the County of Oakland, seeking to vacate, modify, or correct the arbitration order. ALP removed this action from Michigan State Court to the Eastern District of Michigan.

## III. ANALYSIS

### A. Standard of Review

As the Sixth Circuit has recognized, the FAA "presumes that arbitration awards will be confirmed." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (internal citations omitted) (citing 9 U.S.C. § 9). In fact, the Court must confirm the arbitrator's award unless it is vacated, modified, or corrected, as prescribed by the FAA. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) ("Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts . . . The Act also supplies mechanisms for

6

enforcing arbitration awards: a judicial decree confirming an award . . . Under the terms of §9, a court 'must' confirm an arbitration award . . ."). Where "a contract evidencing a transaction involving commerce" contains an arbitration clause, the arbitration falls under the FAA. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995).

Under the FAA, 9 U.S.C. § 10 provides the exclusive grounds for vacatur of an arbitration award. *Hall St.*, 552 U.S. at 584. Under the FAA and controlling Sixth Circuit authority,

> courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error. And if a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.

*Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (internal citations and quotation marks omitted).

"It is well established that courts should play only a limited role in reviewing the decisions of arbitrators." *Dawahare,* 210 F.3d at 669. A court may vacate an award only where it was: (1) procured by fraud, corruption or undue means; (2) when there is evidence that the arbitrators were partial or corrupt; (3) where the arbitrator engaged in misconduct resulting in prejudice; or (4) where the arbitrators exceeded their power or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. 9 U.S.C. §10.

7

The Court may vacate an arbitration award only pursuant to the grounds stated in §10 (or §11) of the FAA, not on the merits of the decision. *See Hall Street*, 552 U.S. at 588-590 (clarifying that §§10 and 11 of the FAA were the exclusive scope of review of an arbitration award and rejecting the assertion that the language of the FAA permits the review of an arbitration award for legal error); *Grain v. Trinity Health, Mercy Health Services, Inc*., 551 F.3d 374, 380 (6th Cir. 2008) (judicial review of an arbitration award on the legal merits is outside the scope of the FAA).

The parties have contracted for a decision by arbitrators, not the Court. *Wachovia Sec., Inc. v. Gangale*, 125 F. App'x 671, 676-77 (6th Cir. 2005) (emphasis in original); *see also, DBM Techs., Inc. v. Local 227, UFCW*, 257 F.3d 651, 656 (6th Cir. 2001) ("[T]his court has called our review over such arbitration awards "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers of Am.,* AFL-CIO, Dist. 27, Sub-Dist. 5, 913 F.2d 1166, 1169 (6th Cir. 1990). "[C]ourts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error. And '[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.'" *Solvay Pharm.*, 442 F.3d at 476 (citation and internal quotations omitted).

Park West bears the burden "to come forward with evidence in support of its claim" that vacatur is warranted. *Jamoua v. CCO Inv. Servs. Corp.*, 2010 U.S. Dist. LEXIS 21763, 2010 WL 891148, at *1 (E.D. Mich. Mar. 10, 2010). Park West alleges that grounds for vacatur exist under FAA §§ 10(3) and 10(4), namely that the arbitrator was guilty of misconduct by refusing "to conduct a hearing and [] to hear evidence material to the controversy" and that he "exceeded the scope of [his] powers" in various ways.[1]   Accordingly, the Court must ascertain whether the arbitrator engaged in misconduct resulting in prejudice, exceeded his power, or so imperfectly executed it that a mutual, final and definite award upon the subject matter was not made.

### B. Federal Arbitration Rules Apply

Park West argues that, "[u]nder Michigan's Uniform Arbitration Act, which applies since the parties contracted for Michigan arbitration, a court may vacate an arbitration award if the arbitrator exceeded his or her power. M.C.L. § 691.1703(1)(d) (emphasis added). Park West does not, however, cite any provision that reflects that the parties contracted for Michigan arbitration, such that the arbitrator was, or this Court is, required to apply the Michigan Uniform Arbitration

---

[1] In its Motion to Vacate, Plaintiff does not allege, nor does it submit any evidence, that the Award was procured by fraud, corruption or undue influence, or that the arbitrator was partial or corrupt, engaged in misconduct, or failed to make an award on the subject matter.

Act to this dispute.  The PSA provided that any dispute arising from the Agreement "shall be exclusively adjudicated by binding and confidential arbitration in Michigan pursuant to the commercial arbitration rules of the American Arbitration Association." (PSA § 8.)  Because the PSA is "a contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, its arbitration clause falls under the Federal Arbitration Act (FAA). *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995).

Although the FAA can sometimes be displaced if the parties unambiguously agree to it, Park West and ALP did not agree to displace it here. *See, e.g., Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 710 (6th Cir. 2005) (a generic Michigan choice-of-law provision did not displace the federal standard for vacating an arbitration award), *abrogated on other grounds by Hall Street Assocs.*, 552 U.S. 576 (2008); *see also Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62 (1995) ("At most, the choice-of-law clause introduces an ambiguity into an arbitration agreement . . . when a court interprets such provisions in an agreement covered by the FAA, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.") (internal citations and quotation marks omitted). *Cf. Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 523 (6th Cir. 2012) (applying Michigan standard for vacatur because the arbitration agreement unambiguously

provided: "Appeals from the arbitration award shall be conducted as provided for in MCL 600.5001, [et] seq. and MCR 3.602[.]")

Park West's assertion that the PSA "neither refers to the FAA nor otherwise suggests that the parties sought to invoke its provisions," *id*., does not establish that "the parties unambiguously intended to displace the federal standard with Michigan law," and Michigan law should govern. *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708 (6th Cir. 2014). Where, as here, the FAA governs the arbitration agreement, 9 U.S.C. § 10 provides the *exclusive* grounds for vacatur. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S.  The Court notes that the parties did not even choose to have Michigan law apply, as it is undisputed that the PSA included a New York choice-of-law clause; therefore, the only connection to Michigan set forth in the PSA is that the arbitration would be adjudicated "in Michigan."

## C. Evidentiary Hearing Not Required

Park West argues that the Arbitrator erred by determining the Award without conducting any hearing or taking any evidence. The Court rejects that argument and finds that it was proper for the Arbitrator to rule on ALP's dispositive motion without oral argument or an evidentiary hearing.  The motion was properly brought under Rule 33 of the AAA Commercial Arbitration Rules, and the sole question at issue in ALP's dispositive motion before the Arbitrator was one of contractual interpretation. *See, e.g., Global Int'l Reinsurance Co. Ltd. v. TIG Ins. Co*., 2009 WL 161086, *5

(S.D.N.Y. Jan. 21, 2009) (affirming summary judgment issued by arbitrator on plain meaning of contract grounds and holding that "because extrinsic evidence is irrelevant to the interpretation of a contract that is clear on its face," the arbitrator was not required to hold an evidentiary hearing before disposing of the claim). "The lack of oral hearings does not amount to the denial of fundamental fairness required to warrant vacating the award, . . . so long as the arbitrator's decision to render a decision solely on documentary evidence is reasonable." *Cragwood Managers, LLC v. Reliance Ins. Co*., 132 F. Supp. 2d 285, 289 (S.D.N.Y. 2001) (internal citation omitted).

As the Sixth Circuit has held, an arbitrator's decision to render an award without an evidentiary hearing does not provide a ground for vacatur under 9 U.S.C. § 10. *Samaan v. Gen. Dynamics Land Sys*., 835 F.3d 593, 599 (6th Cir. 2016) ("Samaan also argues that the arbitration award should be vacated because Samaan did not receive an evidentiary hearing in which he could present evidence or call witnesses. As noted above, however, Samaan points to no caselaw (and we are aware of none) holding that an arbitrator's failure to hold an evidentiary hearing merits vacatur under 9 U.S.C. § 10.").

The Court also finds it relevant that "[e]ach party submitted extensive briefs and numerous exhibits" and "both parties were given every opportunity to present evidence." *Cragwood*, 32 F. Supp. 2d 285, 289. Finally, Park West did not request

an oral hearing at any point in the arbitration proceeding, even after the Arbitrator

notified the parties that:

> The undersigned will review all of the pleadings and Motion papers and
> determine whether the Motion can be addressed without oral argument.
> If that determination is made, the undersigned will advise counsel that
> a written opinion will be forthcoming. If the undersigned determines
> that oral argument is necessary, a video conference call will be arranged
> at a date and time convenient to all counsel.

### D. Arbitration Award

Park West posits that the Arbitrator ignored controlling principles of law when

he misconstrued the release, so this Court should set aside the erroneous order.  It

states that the Arbitrator's characterization of his decision as one based on the "four

corners" and "plain meaning" of the document cannot withstand even mild scrutiny

based on the language of the release and his conclusions.  Although parties entrust

arbitrators with broad discretion and courts are not to reweigh the arbitrator's factual

conclusions, Park West argues that a party is, at a minimum, entitled to what they

bargained for: an arbitral hearing at which an arbitrator takes evidence and renders

a decision based on evidence and the controlling law.

Park West contends that it is a controlling principle of contract interpretation

that meaning must be given to every word of the contract and an interpretation may

not be adopted that renders any portion of the contract nugatory or mere surplusage.

Citing *Sparta Comm. Servs., Inc. v. DZ Bank AG Deutsche Zentral-*

*Genossenschaftsbank*, 160 F.Supp.3d 580, 584 (S.D.N.Y. 2015) (citing *Cornhill*

*Corp. v. S.D. Plants, Inc.*, 217 N.Y.S.2d 1, 3 (N.Y. 1961)) ("it is a cardinal rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect").  In interpreting a contract consideration "must [be given to] the entire contract and [the court must] choose the interpretation . . . which best accords with the sense of the remainder of the contract." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).

Park West states that the Arbitrator interpreted the PSA to require ALP to dismiss only Count VII, but not ALP's claims for conversion, disgorgement of profits, aiding breaches of fiduciary duties, and replevin.  Park West asserts that interpretation contradicts and ignores the PSA's plain language, making a different contract for the parties than they made for themselves. *Cornhill*, 9 N.Y.2d at 599; *see also Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468, 473 (2003); *UAW-GM Human Res. Center v. KSL Recreation Corp.*, 228 Mich.App. 486, 491 (1998).

Park West represents that, in the PSA's second Whereas clause, the parties stated that they intended to "resolve with prejudice . . . any and all claims . . . , including without limitation" Count VII of the State Court Action (which did not relate to Peter's Keepers).  In the release itself, ALP released Park West "from all claims . . . and causes of action of any kind . . . relating to or arising out of the sale of goods by ALP to Park West." Ex. 1, § 2.  In State Court Action, all the claims

ALP asserts against Park West "relate[] to or aris[e] out of the sale of goods by ALP to Part West," so Park West argues that the PSA's plain language releases them all. Ex. 1, § 2 ("ALP releases . . . all claims . . . and causes of action of any kind . . . .").

Park West argues that a claim survives the release only if it fits within the narrow exception—and here the narrow exception is for "claims for breach of contract relating to the enforceability of the" Peter's Keepers sales agreement. *Id*. It states that none of ALP's claims for conversion, disgorgement of profits, aiding a breach of fiduciary duty, or replevin sound in contract, so none of them fall within the narrow exception and the release applies to them all. Park West suggests that this interpretation dovetails with the rest of the settlement agreement.

Park West cites the second Whereas clause, which states that the parties intend to "resolve with prejudice . . . any and all claims . . . , including without limitation" Count VII. It asserts that, because the reference to Count VII ("the Seventh Cause of Action") is immediately preceded by the words "without limitation," the reference can't reasonably be construed to limit the release to only Count VII. It believes the second Whereas clause shows that the parties intended to release "any and all claims," and that Count VII is among, but not the extent of, the claims released. Park West contends that, through the PSA, ALP released its claims for conversion, disgorgement, aiding a breach of fiduciary duty, and replevin in the State Court

Action, leaving ALP free to pursue contract claims about the enforceability of the sales agreement, and the Arbitrator should have found the same.

Park West claims that the Arbitrator's second error of law was his failure to apply the *expressio unius* doctrine correctly That doctrine means that "the expression of one thing implies the exclusion of the other." *HealthNow New York, Inc. v. David Home Builders, Inc.*, 112 N.Y.S.3d 360, 362 (2019). It states that the doctrine "is only an aid to statutory construction, not a rule of law, making the principle an uncertain guide to interpretation." *Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 111 (2d Cir. 2019) (internal quotations and citation omitted). It should apply only when "circumstances support[] a sensible inference that the term left out must have been meant to be excluded." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 74, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002). The arbitrator stated that because Count VII was specifically referenced in the PSA, the *expressio unius* doctrine applied to preserve all claims other than Count VII. Park West asserts that this conclusion was contrary to law.

Park West contends that the PSA broadly releases "all claims . . . and causes of action of any kind" with only a narrow exception for a particular contract claim, particularly when considering the second Whereas clause that states the released claims include, "without limitation," Count VII. Park West asserts that it is nonsensical to hold that the reference to Count VII is limiting when the words

16

immediately preceding "the Seventh Cause of Action" are "without limitation." It argues that not just "one thing" was identified in the release, a prerequisite to applying the *expressio unius* doctrine.  For these reasons, Park West states that the Award should be set aside.

Park West also contends that the Arbitrator failed to apply New York law holding that, in interpreting a release "executed in a commercial context by parties in roughly equivalent bargaining positions and with ready access to counsel," as was the case here, "the general rule is that if the language of the release is clear . . . the intent of the parties is indicated by the language employed." *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F.Supp.2d 178, 189 (S.D.N.Y. 2008) (quoting *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 115 (2nd Cir. 2002)). "And when general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Consorcio Prodipe*, 544 F.Supp.2d at 189 (citation omitted). As ALP's counsel drafted the release language at issue and is the releasor, Park West argues that the release should have been construed broadly against ALP but the Arbitrator failed to do so.

Finally, Park West claims that the Arbitrator erred when basing his construction of the release on his factual conclusion that it: (a) was "no coincidence" that ALP received in payment for the release the exact amount it sought in Count VII; and (b) would be "illogical" for ALP to accept the precise amount it sought in

Count VII to settle any claim other than Count VII. Park West contends that it would be even more illogical for Park West to pay 100% of the amount sought in Count VII (a claim Park West contended was time-barred) to settle only that claim, as a party compromising a claim pays less than the full amount sought. Park Wests insists that these statements demonstrate that the Arbitrator reached factual issues, yet did so without taking any evidence or conducting a hearing. Park West argues that this is error, such that the Award should be set aside.

The Court finds that the arbitrator did not engage in misconduct. Michigan law, like federal law, precludes a reviewing court from "engaging in contract interpretation, which is a question for the arbitrator." *Wolf Creek Prods. v. Gruber*, No. 342146, 2019 Mich. App. LEXIS 140, at *11 (Jan. 24, 2019).  As discussed below, there is nothing in the PSA, the AAA rules or Michigan rules that prohibited the Arbitrator from reaching the result he reached, which means that the Court cannot engage in a review of the merits of the Award. *Wolf Creek*, 2019 Mich. App. LEXIS 140 at *11 (denying motion to vacate because plaintiff did not "identify any authorizing provision or rules of the American Arbitration Association that the arbitrators have exceeded).

Although Park West alleges that the Arbitrator exceeded his powers by ignoring "the express terms of the very agreement conferring jurisdiction on the Arbitrator," the Court finds that this is simply an attempt to have this Court do what

it cannot—second guess the Arbitrator for reasons outside of § 10 of the FAA. *See Lattimer-Stevens Co.*, 913 F.2d at 1169 (holding that "the arbitrator's decision in this case is immune from judicial review," where the "arbitrator clearly focused on the language of the [contract] in interpreting Article XXIV," and "his decision was rational and made in regard to the language of the [contract].")  In this case, the parties agreed in Section 8 of the PSA that "any dispute arising from or related to" the Partial Settlement Agreement was to be resolved by the Arbitrator.  There was no exception to the scope of his authority, nor any "matter not submitted" to the Arbitrator: all matters were submitted to the Arbitrator; rather, the matter decided by the Arbitrator (the scope of the PSA) was exactly what was submitted to him.

Park West's claim that the Arbitrator exceeded his powers by "disregard[ing] controlling legal principles" is not supported by applicable law. Since the Supreme Court's decision in *Hall St. Assocs.*, where it held that 9 U.S.C. § 10 provides the exclusive grounds for vacatur, the Sixth Circuit has recognized that 9 U.S.C. § 10 does not provide that a "manifest disregard of the law" as a grounds for vacatur. *Grain v. Trinity Health*, 551 F.3d 374, 379 (6th Cir. 2008) (rejecting argument for modification of arbitral award based on theory of "manifest disregard of the law" because that theory "appears nowhere in § 11, and the Supreme Court has [] explained [in *Hall St. Assocs.*] that the enumerated grounds in §§ 10 and 11 provide the 'exclusive' grounds for obtaining relief from an arbitration decision").

19

Even if this Court could engage in the review that Park West seeks, it would still be required to confirm the Award because the Arbitrator did not err in any way. Park West claims that the Arbitrator erred in interpreting the PSA's second whereas clause (that the parties intended to "resolve with prejudice . . . any and all claims . . . , including without limitation" Count VII of the New York State Court Action), and the release language (providing that ALP released Park West "from all claims . . . and causes of action of any kind . . . relating to or arising out of the sale of goods by ALP to Park West"). According to Park West, the only acceptable interpretation of that language was that ALP was required to dismiss all torts claim from the State Court Action. The Arbitrator disagreed and found that ALP's only obligation under the PSA was to dismiss Count VII of the State Court Action.

In reaching this decision, the Arbitrator fully considered the terms of the PSA, holding that (1) the first "whereas" clause of the agreement "clearly conveys the parties' intent that [the PSA] was designed to resolve the seventh cause of action in [the First Amended Complaint]" (Award at 7); while (2) the third "whereas" clause "conveys the parties' intent that the seventh Count of the First Amended Complaint is the only place where a claim has been made for the past due invoices;" and (3) as set forth in the third "whereas" clause, "it was clearly the intent of the parties that

20

the remaining claims and defenses in both the federal and state court actions were to

continue to be litigated between the parties subsequent to executing [the PSA]."

With respect to Section 2 of the PSA, the Arbitrator found that ALP's "sole

obligation, upon payment of the settlement proceeds, was to dismiss Count VII" and

that under "the doctrine of expression unius, all other Counts are excluded from

[ALP's] obligation to dismiss."  The Arbitrator concluded:

> To read [Section 2(b)] as proposed by [Park West] would be to
> completely ignore the prior limiting language of [the PSA] and destroy
> the concept of a "limited release. [Park West's] argument could only
> succeed if [the PSA] was a "Settlement Agreement and General
> Release." It is simply no coincidence that the consideration referenced
> in [the PSA] is the exact amount of damages [ALP] sought to recover
> under Count VII of the First Amended Complaint for prior artwork
> sold, delivered but unpaid by [Park West]. It is illogical to conclude that
> [ALP] would accept payment of the exact amount demanded under
> Count VII. of the First Amended Complaint for open invoices due by
> [Park West] and, without further or additional consideration, release
> claims against Claimant set forth in the First Amended Complaint in
> the approximate amount of $400,000,000.

The Court finds that the Arbitrator properly considered the entire PSA, "not

as if isolated from the context, but in the light of the obligation as a whole and the

intention of the parties as manifested thereby." *Riverside S. Planning Corp. v.

CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009). Park West's interpretation

of the carveout language as providing only for the survival of ALP's claims for

breach of contract claims that related to the enforceability of the Keepers

Transaction—when there was no breach of contract claims related to the

21

enforceability of the Keepers Agreement in the State Court Action—was an absurd interpretation that needed to be rejected. *Pujals v. Standard Chartered Bank*, 533 F. App'x 7, 10 (2d Cir. 2013) ("Because Plaintiffs' interpretation of the Purchase Letter would yield these and other absurd results, it is an unreasonable interpretation of the contract. The only reasonable interpretation offered of "NAV" as used in the Purchase Letter is that offered by Defendant, and thus we find no ambiguity in the contract.").

The Court rejects Park West's assertion that the Arbitrator erred in applying *expressio unius* to find that ALP was not required to release any count other than Count VII. As the Arbitrator found, the parties clearly intended the words "without limitation" to release any as yet unasserted claims for non-payment relating to the sale of non-Peter's Keepers artwork, but not other counts of the First Amended Complaint. That is why the PSA specifically called for the dismissal of only Count VII (for non-payment of non-Peter's Keepers items), while including the words "without limitation" to cover any other claims for non-payment of non-Peter's Keepers.

The Court notes that Park West is a sophisticated party and was represented by counsel in drafting and negotiating the PSA. If Park West wanted ALP to dismiss additional claims from the State Court Action in exchange for the $2,643,036.00 payment, it would have said so explicitly in the PSA. *See, e.g., In re Ore Cargo, Inc.*,

544 F.2d 80, 82 (2d Cir.1976) ("Applying the maxim, *expressio unius est exclusio alterius*, the failure of . . . a sophisticated commercial lender, to include a similar specific reference to tort claims precludes our divining or implying such a right on the basis of the general language of the agreement."); *Hudson v. I.R.S.*, 2004 WL 1006266, at *8 (N.D.N.Y. Mar. 25, 2004) (same).

### E. Conclusion

The Arbitrator issued an eight (8) page Award.  The Award contains  an extensive analysis of the case background, the motions filed by the parties, and the legal claims presented by Park West.  The Award leaves no doubt that the Arbitrator fully considered the terms of the Partial Settlement Agreement, as he analyzed them at length. *See* Award at 7-8.  For that reason, this Court is prohibited from reviewing the merits of the Award. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) ("it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that").

The Court finds that the Arbitrator also analyzed Park West's claims in detail, including a reasoned explanation of why Park West did not provide sufficient support for its legal claims. For the reasons set forth above, the Court finds that the Award should be confirmed and that, pursuant to §9 of the FAA, the Court denies Park West's Motion to Vacate and grants ALP's Motion to Confirm Arbitration Award. The Court also dismisses Park West's cause of action, with prejudice.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Park West's Motion to Vacate) **[ECF No. 12]** is **DENIED**.

**IT IS FURTHER ORDERED** that ALP's Motion to Confirm Arbitration Award **[ECF No. 11]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Park West's cause of action is **DISMISSED WITH PREJUDICE**.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED: June 15, 2023

24